[Cite as *State v. Young*, 2014-Ohio-2213.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### GREENE COUNTY

STATE OF OHIO

     Plaintiff-Appellee

v.

CARLOS M. YOUNG, JR.

     Defendant-Appellant


Appellate Case No.    2013-CA-22

Trial Court Case No.   2012-CR-221


(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

## O P I N I O N

Rendered on the 23rd day of May, 2014.

. . . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, ELIZABETH ELLIS, Atty. Reg. No. 0074332, Assistant Greene County Prosecutors, 61 Greene Street, Xenia, Ohio 45385
       Attorneys for Plaintiff-Appellee

SCOTT N. BLAUVELT, Atty. Reg. No. 0068177, 246 High Street, Hamilton, Ohio 45011
       Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1}   In this case, Defendant-Appellant, Carlos Young, Jr., appeals from his

conviction and sentence, following a guilty plea to two counts of Gross Sexual Imposition, both

felonies of the third degree. Young contends that the trial court erred in accepting his guilty plea, because the plea was not knowing, intelligent, and voluntary. In particular, Young contends that the trial court failed to fully advise him of the sex-offender tier level and the corresponding registration and community-notification requirements of the Adam Walsh Act.

{¶ 2} We conclude that the trial court erred in failing to advise Young of the registration requirements under R.C. Chapter 2950 before accepting Young's guilty plea to charges of Gross Sexual Imposition. However, the trial court partially complied with the nonconstitutional Criminal Rule 11 requirements and Appellant did not demonstrate prejudice. We therefore affirm the trial court judgment.

## I. Facts and Course of Proceedings

{¶ 3} Young was indicted on June 4, 2012, on one count of Rape of a person less than thirteen years of age, and two counts of Gross Sexual Imposition of a person less than thirteen years of age. These charges arose from Young's alleged rape of a two-year old child. The Rape charge was a first degree-felony, carrying a potential sentence of life in prison, and the two counts of Gross Sexual Imposition were third-degree felonies.

{¶ 4} After Young pled not guilty, the matter was tried to a jury in late October 2012. The jury was unable to reach a verdict and was dismissed. The case was then set for retrial in mid-December 2012. However, on December 17, 2012, Young and the State entered into a plea agreement, pursuant to which Young agreed to plead guilty to the two charges of Gross Sexual Imposition. In exchange, the State agreed to dismiss the Rape charge. The plea agreement, which was signed by Young, indicated that there would be a sexual registration sanction, but said

nothing about the tier level or registration requirements.  Doc. #144, p. 1.

{¶ 5}      On December 17, 2012, the trial court conducted a Crim.R. 11 colloquy and accepted Young's guilty plea.  During the plea hearing, the court noted that there was a "sexual registration," and Young stated that this was his understanding of the plea agreement.  The following exchange then occurred:

THE COURT:  All right.  Is there an understanding as to the tier level on this one.

MR. HAYES:  I don't believe we've talked about it, Judge, and as we sit here now, I don't – I believe it's a Tier II, but –

THE COURT:  Well, all right.  If you haven't done it, you haven't done it.  It's not required at this point in time.

You understand it's pretty black and white.  You just take the charge, you plug it into the form and you come out with the answer.

All right.  Mr. Young, are there any other deals, conditions, or promises present in this case that we haven't discussed?

THE DEFENDANT:  No.  Transcript of Guilty Plea Hearing, December 17, 2012, pp. 11-12.

{¶ 6}      The Rule 11 Notification and Wavier form, which was signed and filed the same day, also indicated that sexual registration would be one of the sanctions imposed, but the tier level and corresponding requirements were not outlined.  *See* Doc. #142, p. 1.  After accepting the guilty plea, the trial court referred the matter for  a presentence investigation and set a sentencing hearing for February 6, 2013.

{¶ 7}    At the sentencing hearing, the trial court discussed the sexual registration requirements in detail.   Because Young was classified as a Tier II sex offender due to the nature of the offense, the court informed Young that he would have to verify his residence every 180 days for 25 years.   The court described all the requirements for Tier II sex offenders, including the potential sanctions for failing to register.   *See* Transcript of Disposition Hearing, February 6, 2013, pp. 2-6.   At the end of the discussion, the following exchange occurred:

> THE COURT:   Now, do you understand everything that I've indicated to you at this point.
>
> THE DEFENDANT:   Yes.
>
> THE COURT:   Okay.   And I understand that you've gone over this with your Counsel and you've signed this document entitled Explanation of Duties to Register as a Sex Offender; is that correct?
>
> THE DEFENDANT:   Yes.
>
> THE COURT:   All right.   Anything else either Counsel wants to address on the issue of registration?
>
> MRS. BURKE:   No, Your Honor.
>
> MR. KING:   Nothing, Your Honor.   *Id.* at p. 6.

{¶ 8}    After discussing the registration requirements, the trial court sentenced Young to five years in prison on each count, to be served concurrently, five years of post-release control, court costs, and $100 in restitution.   In May 2013, Young filed a motion for leave to file a delayed appeal, and we granted the motion.   Young now appeals from his conviction and sentence.

## II. Did the Trial Court Err in Accepting the Guilty Plea?

{¶ 9}     Young's sole assignment of error states that:

The Trial Court Erred to the Prejudice of Appellant in Its Acceptance of a Guilty Plea Which Was Not Knowing, Intelligent and Voluntary in Violation of Appellant's Due Process Rights Under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

{¶ 10}     Under this assignment of error, Young contends that his plea was not knowing, intelligent, and voluntary because, prior to accepting Young's plea, the trial court did not explain Young's sex offender tier level and did not determine that Young understood the tier level. Young argues that the registration, community notification, and verification requirements imposed by the Adam Walsh Act (AWA) constitute punishment and must be addressed during plea hearings.

{¶ 11}     We previously considered a somewhat different situation in *State v. Hawkins*, 2d Dist. Greene No. 2012-CA-49, 2013-Ohio-2572. As here, the trial court did not discuss the registration and notification requirements under the AWA during the plea hearing, other than to note that the defendant would be subject to sexual registration. *Id.* at ¶ 4. There are a few differences between the case before us and *Hawkins*. One is that the State incorrectly said during the hearing in *Hawkins* that the defendant would be required to register as a Tier II, or lower level of offender, when he was, in fact, required to register under Tier III. Here, the level was implied as Tier II, but no decision was made because the trial court did not feel it was necessary.

**{¶ 12}** In addition, the record in *Hawkins* indicates that defense counsel had not discussed registration requirements with his client " 'at all.' " *Id.* at ¶ 13, quoting from the Plea Transcript, p. 10. The record in the case before us indicates that Young knew that the plea agreement required registration, but nothing was said during the hearing about whether he and his attorney had discussed it. At the hearing, the prosecutor stated that "we" had not talked about the tier level, and the implication is that the reference was to counsel for both parties. However, the record is not completely clear on this point.

**{¶ 13}** In discussing the validity of the plea in *Hawkins*, we noted that:

> Prior to the Adam Walsh Act version of R.C. Chapter 2950, a trial court had no obligation to inform a sex offender of the applicable registration, verification, and notification requirements before accepting a guilty plea. *See, e.g.*, *State v. Stape*, 2d Dist. Montgomery No. 22586, 2009-Ohio-420, ¶ 19. Those requirements were considered remedial, collateral consequences of the underlying sex offense. Therefore, Crim.R. 11 imposed no duty on a trial court to mention them. *Id*. at ¶ 8.

**{¶ 14}** We also observed, however, that "[i]n *State v. Williams*, 129 Ohio St.3d 324, 2011-Ohio-3374, 952 N.E.2d 1108, ¶ 16, the Ohio Supreme Court held that the Adam Walsh Act version of R.C. Chapter 2950 is punitive, not remedial. As a result, * * * Crim.R. 11 obligates a trial court to advise a defendant who is being sentenced under the Adam Walsh Act at least of the basic registration requirement before accepting his plea." *Hawkins*, 2d Dist. Greene No. 2012-CA-49, 2013-Ohio-2572, at ¶ 9.

**{¶ 15}** We held that this duty is "a non-constitutional requirement of Crim.R. 11,"

which would require a finding only of "substantial compliance." *Id.* at ¶ 12. Such a finding means that " ' "under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." ' " *Id.*, quoting *State v. Collins*, 2d Dist. Greene No.2012-CA-2, 2012-Ohio-4969, ¶ 6, which in turn quotes *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶ 16} After noting the prosecutor's misstatement about the tier level, we observed that the trial court had not told the defendant about the requirement to register every ninety days, or about the fact that community notification would be required. Instead, the trial court told the defendant that " 'there will be a registration requirement and I will announce that at the sentencing and you will have to follow those requirements.' " *Hawkins*, 2d Dist. Greene No. 2012-CA-49, 2013-Ohio-2572, at ¶ 13, quoting from the Plea Transcript, at p. 10. We then stated that:

> In our view, the foregoing statement fell short of satisfying the trial court's obligation under Crim.R. 11 to advise Hawkins of the basic consequences he faced under R.C. Chapter 2950. "This is not to say, however, that the trial court is required to review each of the numerous individual restrictions and requirements set forth in R.C. Chapter 2950 in order to substantially comply with nonconstitutional provisions of Crim.R. 11." *State v. Creed*, 8th Dist. Cuyahoga No. 97317, 2012-Ohio-2627, ¶ 16. For present purposes, we hold only that the trial court did not substantially comply with Crim.R. 11 when it allowed the prosecutor's misstatement about the applicable tier level to stand uncorrected and failed to inform Hawkins about his address-verification obligation every ninety

days for life and about the fact that a Tier III conviction includes community notification. The trial court's bare observation that "there will be a registration requirement" was not enough, even under a substantial-compliance standard. *Id.* at ¶ 14.

{¶ 17} Young contends that under the decision in *Hawkins*, we must vacate his guilty plea based on the trial court's failure to substantially comply with Crim.R. 11. The State argues that the trial court substantially complied with Crim.R. 11. In addition, the State maintains that even if the trial court failed to substantially comply, the "partial compliance" standard requires that the plea be upheld.

{¶ 18} In support of its first argument, the State maintains that the case before us is more like *State v. Butcher*, 12th Dist. Butler No. CA2012-10-206, 2013-Ohio-3081, than it is to *Hawkins*. In *Butcher*, the trial court informed the defendant that he would be designated a Tier III sex offender and would have to report to the sheriff of the county in which he resided, every 90 days for the rest of his life. *Id.* at ¶ 3. The court then asked the defendant if he understood that, and if it would change anything he wanted to do regarding the plea. In response, the defendant said no. *Id.*

{¶ 19} On appeal, the defendant argued that "his plea was not knowing, intelligent, or voluntary because he was not informed that his classification as a Tier III sex offender would require him to register in the county [where] he works, attends school, or is 'temporarily domiciled.' " *Id.* at ¶ 7. Although the Twelfth District Court of Appeals agreed with the requirements established in *Hawkins* and other cases, it concluded that the trial court had substantially complied with Crim.R. 11. In this regard, the court of appeals observed that:

In the present case, the record indicates that Butcher subjectively understood the maximum penalty resulting from his guilty plea, including his classification as a Tier III sex offender and the resulting registration requirements. During the plea hearing, the trial court correctly advised Butcher that he would be labeled a Tier III sex offender. R.C. 2950.01(G)(1)(a). The trial court also notified Butcher that he would be subject to certain registration requirements as a result of this classification. The trial court specifically informed Butcher that every 90 days, for the rest of his life, he would be required to register with the sheriff of the county where he resides. Importantly, after informing Butcher of his Tier III classification and the lifetime reporting requirements, the trial court specifically asked Butcher if this "in any way change[d] what you wish to do here as far as plea," and Butcher respond[ed], "no."

The trial court's failure to specify that Butcher would also be required to register with the sheriff of the county in which he works, attends school, or "temporarily resides" does not invalidate his plea. Rather, the totality of the circumstances indicate that Butcher subjectively understood that by pleading guilty to rape, he would be subjected to certain restrictions as a Tier III sex offender. Accordingly, we find that the statements made by the trial court with regard to Butcher's registration requirements under R.C. Chapter 2950 were such that the trial court substantially complied with the nonconstitutional provisions of Crim .R.11. *Id.* at ¶ 12-13.

**{¶ 20}** These conclusions are consistent with our comment in *Hawkins* that a trial court

need not elaborate on every specific registration requirement before accepting a plea. *Hawkins*, 2d Dist. Greene No. 2012-CA-49, 2013-Ohio-2572*,* at ¶ 14. However, after examining both *Hawkins* and *Butcher*, we conclude that the situation in the case before us is more akin to *Hawkins*, and that the trial court, therefore, failed to substantially comply with Crim.R. 11. At the plea hearing, the State indicated a belief that the registration might be Tier II, but the matter was not settled then, nor was it explained. Furthermore, unlike *Butcher*, the trial court in the case before us failed to discuss any of the registration requirements. Accordingly, the trial court failed to substantially comply with Crim.R. 11.

{¶ 21} This leaves the question of whether the trial court partially complied. In this vein, the State argues that a trial court partially complies with Crim.R. 11 when it mentions a right without explaining it. The State also argues that Young was not prejudiced by the court's actions.

{¶ 22} We agree that the trial court partially complied with Crim.R. 11. After concluding that the trial court in *Hawkins* failed to substantially comply with Crim. R.11, we went on to consider whether the court had partially complied with the rule. We observed that:

> "When the trial judge does not *substantially* comply with Crim.R. 11 in regard to a nonconstitutional right, reviewing courts must determine whether the trial court *partially* complied or *failed* to comply with the rule. If the trial judge partially complied, e.g., by mentioning mandatory postrelease control without explaining it, the plea may be vacated only if the defendant demonstrates a prejudicial effect." (Emphasis sic.) *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N .E.2d 462, ¶ 32. "If the trial judge completely failed to

comply with the rule, e.g., by not informing the defendant of a mandatory period of postrelease control, the plea must be vacated." *Id*. *Hawkins*, 2d Dist. Greene No. 2012-CA-49, 2013-Ohio-2572, at ¶ 15.

**{¶ 23}** We then stated that:

Although the trial court did mention an unspecified "registration requirement," the trial court wholly failed to mention in-person address verification every ninety days for life or community notification during the plea hearing. Its omissions about these topics reflect non-compliance with Crim.R. 11 rather than partial compliance. The prosecutor's misstatement about the applicable tier level also was significant. A Tier II sex offender faces semi-annual reporting for twenty-five years, whereas a Tier III sex offender must report to the sheriff's office four times a year for life and typically must endure community notification.

On the record before us, we find non-compliance with Crim.R. 11 as to the punitive address-verification and community-notification provisions of the Adam Walsh Act version of R .C. Chapter 2950. As a result, Hawkins' guilty plea must be vacated without regard to a showing of prejudice. *Id*. at ¶ 16-17, citing *Clark* at ¶ 32.

**{¶ 24}** *Hawkins* is distinguishable for two reasons. First, in *Hawkins* we found significance of the misstatement about the tier level. Here, the correct tier level was mentioned. Also in *Hawkins,* the misinformation resulted in prejudice because Hawkins was advised he was entering a plea to a Tier II offense (with no community notification requirements) but actually

Tier III applied that required community notification and lifetime reporting requirements. As *Hawkins* illustrates, a trial court giving a defendant incorrect, prejudicial information may result in a finding of noncompliance.

{¶ 25} However that is not the case here. We find that the trial court partially complied with Rule 11. The trial court mentioned the registration requirement and it was contained in the plea form, but did not explain it. The trial court did not materially mislead or misinform Young. Since we conclude that partial compliance occurred we now must consider whether Young was prejudiced.

{¶ 26} Young has not demonstrated prejudice. As indicated above, at the time of disposition the court personally asked Young if he understood his explanation of Tier II reporting requirements and the document entitled Explanation of Duties to Register as a Sex Offender. Young indicated he understood the information. In response to the inquiry by the trial court Young's attorney stated he had nothing to address on the issue of registration. Transcript of Disposition Hearing, February 6, 2013, pp. 2-6. Young's failure to question the detailed registration information provided by the trial court at the time of sentencing demonstrates his understanding and lack of surprise or prejudice.

{¶ 27} Accordingly, Young's sole assignment of error is overruled.

## III. Conclusion

{¶ 28} Young's sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN, J., concurs.

FROELICH, P.J., dissenting:

{¶ 29}    In *Butcher*, the trial court informed the defendant that he would be designated a Tier III offender and that he would have to report to the sheriff of the county in which he resided every ninety days; the court then followed up by asking if he understood.   I agree this was partial compliance.

{¶ 30}    Here, the Appellant merely acknowledged that there was a "sexual registration" requirement, but was never informed of the Tier level, that he would have to report to the sheriff, or how often and for how long he would be required to report.   The court's statement that "it's not required at this time" was unintentionally as misleading as the incorrect designation in *Hawkins*; and its explanation that "it's pretty black and white.   You just take the charge, you plug it into the form and you come out with the answer," while statutorily correct, did not inform the defendant, even partially, of the "basic registration requirements."   *Hawkins* ¶ 9.

{¶ 31}    From the record of the plea colloquy, I cannot conclude that the Appellant subjectively understood the implications of his plea.

. . . . . . . . . .

Copies mailed to:

Nathaniel R. Luken
Elizabeth Ellis
Scott N. Blauvelt
Hon. Stephen Wolaver