[Cite as *State v. Wallace*, 2019-Ohio-1005.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 17AP-818 |
| v. | : | (C.P.C. No. 16CR-1655) |
| Deandre D. Wallace, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 21, 2019

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Steven L. Taylor*, for appellee. **Argued:** *Steven L. Taylor*.

**On brief:** *Yeura R. Venters*, Public Defender, and *George M. Schumann*, for appellant. **Argued:** *George M. Schumann.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Defendant-appellant, Deandre D. Wallace, appeals from a judgment of the Franklin County Court of Common Pleas convicting him pursuant to guilty pleas and imposing sentence. For the following reasons, we affirm in part and reverse in part.

## I. Facts and Procedural History

{¶ 2} Wallace was indicted in March 2016 on one count of aggravated burglary, two counts of kidnapping, two counts of aggravated robbery, four counts of rape, one count of gross sexual imposition, and one count of tampering with evidence. Each of the charges carried a firearm specification. He filed a plea of not guilty to the charges. Wallace's appointed counsel filed a suggestion of incompetence and requested the court order an evaluation of Wallace's mental condition. The trial court ordered a mental examination of Wallace. Pursuant to that order, an examination was conducted and a report was filed

opining that Wallace was capable of understanding the nature and objective of the proceedings against him and assisting in his defense. At a hearing conducted on August 9, 2016, Wallace's counsel stipulated to the report of the competency evaluation. At a subsequent hearing conducted on October 17, 2016, Wallace's counsel again stipulated to the report of the competency evaluation.

{¶ 3}   On May 8, 2017, the court convened for trial, and Wallace's counsel explained that a plea offer had been made and discussed with Wallace. The prosecutor for the state of Ohio, plaintiff-appellee, indicated the offer was a recommendation for a 20-year prison sentence for guilty pleas on charges of aggravated burglary, aggravated robbery, and rape, with firearm specifications on each charge, and that Wallace would have to testify against his co-defendants. Wallace indicated he did not want to plead guilty or serve 20 years, but indicated he would plead to some other charge. The trial court explained that Wallace's options were to accept the plea offer, make a counteroffer, or proceed with a jury trial. When Wallace indicated he did not know what to do, the trial court advised Wallace to discuss the matter further with his counsel. Later the same day, the court reconvened and Wallace entered guilty pleas to one count of aggravated burglary with a firearm specification, one count of aggravated robbery with a firearm specification, and one count of rape with a firearm specification. The court accepted Wallace's pleas and found him guilty of those charges. The court entered a nolle prosequi on the other charges in the indictment.

{¶ 4}   The trial court conducted a sentencing hearing on June 28, 2017. At the sentencing hearing, the trial court noted Wallace's counsel had stipulated to the competency evaluation report at the prior hearings. The trial court accepted the joint recommendation and sentenced Wallace to 11 years imprisonment on each of the convictions for aggravated burglary, aggravated robbery, and rape, with those sentences to run concurrently. The trial court also sentenced Wallace to 3 years on each of the firearm specifications, with those sentences to run consecutively to each other and to the 11 year terms, for a total term of imprisonment of 20 years. The trial court found that prison time was mandatory on all the convictions. The court notified Wallace he would be subject to post-release control upon release and that he was classified as a Tier III sex offender, with lifetime registration and verification requirements. On June 28, 2017, the trial court issued

a judgment entry journalizing the sentence. Wallace failed to timely appeal the trial court's judgment, but filed a motion for delayed appeal, which this court granted.

## II. Assignments of Error

{¶ 5}  Wallace assigns the following two assignments of error for our review:

> [I.] The trial court erred by entering a judgment of conviction for a sex offense based upon a guilty plea that was not knowing, intelligent and voluntary.

> [II.] The trial court erred in failing to make a finding as to whether or not the defendant-appellant was competent to plead guilty.

## III. Analysis

## A. Failure to comply with Crim.R. 11(C)

{¶ 6}  Wallace asserts in his first assignment of error that his guilty plea to the charge of rape was not made knowingly, intelligently, and voluntarily because the trial court did not inform him at the plea hearing that the rape conviction would result in him being classified as Tier III sex offender, with corresponding registration, community notification, and verification requirements for life.

{¶ 7}  " 'When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.' " *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Crim.R. 11(C) provides specific requirements for a trial judge to follow in order to help ensure that guilty pleas are knowingly, intelligently, and voluntarily made. *See State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 41 ("To ensure that pleas of guilty and no contest are voluntarily, knowingly, and intelligently made, trial courts must accurately advise defendants of the law in Crim.R. 11 plea colloquies."). Crim.R. 11(C)(2) imposes the following duties on a trial judge in a felony case:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges

and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 8} A trial court must strictly comply with Crim.R. 11(C)(2)(c) and advise the defendant of the federal constitutional rights protected by the rule. *Veney* at ¶ 18-21; *State v. Haddad*, 10th Dist. No. 16AP-459, 2017-Ohio-1290, ¶ 7. With respect to non-constitutional protections under Crim.R. 11(C)(2)(a) and (b), substantial compliance is sufficient. *Veney* at ¶ 14-17; *Haddad* at ¶ 8.

{¶ 9} Wallace argues the trial court failed to comply with Crim.R. 11(C)(2)(a) because it did not inform him at the plea hearing that, as a result of his guilty plea to the charge of rape, he would be classified as a Tier III sex offender and would be subject to registration, community notification, and verification requirements. We begin by noting Wallace does not assert that his guilty pleas to the charges of aggravated burglary and aggravated robbery, and the associated firearm specifications, were not made knowingly, intelligently, and voluntarily. Therefore, our analysis of Wallace's first assignment of error only pertains to Wallace's plea of guilty to the charge of rape.

{¶ 10} Wallace pled guilty to rape, in violation of R.C. 2907.02,[1] which is defined as a "sexually oriented offense" pursuant to R.C. 2950.01(A)(1). Under R.C. 2950.01(G)(1)(a), a defendant who pleads guilty to rape in violation of R.C. 2907.02 is classified as a Tier III sex offender. Tier III sex offender status is the most restrictive category under R.C. Chapter

---

[1] The trial court's judgment entry incorrectly referred to the rape charge as in violation of R.C. 2901.02; however, both the indictment and the entry of guilty plea form both correctly referred to the charge as a violation of R.C. 2907.02.

2950, and requires registration every 90 days for life as well as community notification obligations. *State v. Palmer*, 131 Ohio St.3d 278, 2012-Ohio-580, ¶ 7.

{¶ 11} The General Assembly has significantly modified Ohio's sex offender registration laws during the past quarter century, first with the enactment of Ohio's version of the federal "Megan's Law" in 1996, and then with the enactment of Ohio's version of the federal "Adam Walsh Act" in 2007. *State v. Hartley*, 10th Dist. No. 15AP-192, 2016-Ohio-2854, ¶ 9. Under Megan's Law, this court held that a trial court's failure to advise a defendant of the registration and notification requirements resulting from a guilty plea to a sex offense before accepting that plea did not render the plea invalid because Megan's Law was not punitive and the registration and notification requirements were collateral consequences of the guilty plea. *State v. Sansone*, 10th Dist. No. 11AP-799, 2012-Ohio-2736, ¶ 18. Following enactment of the Adam Walsh Act, the Supreme Court of Ohio held that R.C. Chapter 2950, providing for sex offender registration and notification, is punitive. *State v. Williams*, 129 Ohio St.3d 344, 2011-Ohio-3374, ¶ 16. Thus, the sex offender classification and corresponding registration and notification requirements imposed under R.C. Chapter 2950 on a defendant convicted of a sexually oriented offense are part of the penalty for that conviction. Accordingly, Crim.R. 11(C)(2)(a) requires a trial court to determine that a defendant understands these requirements before accepting a plea of guilty or no-contest to a sexually oriented offense. This conclusion is consistent with the consensus of appellate courts across the state. *See State v. Jackson*, 1st Dist. No. C-110645, 2012-Ohio-3348, ¶ 6 ("[A] defendant must be informed of [the registration, community notification, and verification requirements of the Adam Walsh Act] before his plea of guilty may be accepted."); *State v. Hawkins*, 2d Dist. No. 2012-CA-49, 2013-Ohio-2572, ¶ 9 ("Crim.R. 11 obligates a trial court to advise a defendant who is being sentenced under the Adam Walsh Act at least of the basic registration requirement before accepting his plea."); *State v. Hines*, 6th Dist. No. E-13-054, 2014-Ohio-1996, ¶ 12 ("[T]he court must at least inform the defendant about the fact that a tier III conviction includes community notification."); *State v. Huff*, 7th Dist. No. 13 BE 37, 2014-Ohio-5513, ¶ 21, quoting *Hawkins* at ¶ 9 (" 'Crim.R. 11 obligates a trial court to advise a defendant who is being sentenced under the Adam Walsh Act at least of the basic registration requirement before accepting his plea.' "); *State v. Creed*, 8th Dist. No. 97317, 2012-Ohio-2627, ¶ 16 ("If those

requirements are now punitive under R.C. Chapter 2950, then they are no longer considered collateral consequences of a conviction. Rather, they are part of the penalty for the offense and must be addressed during a Crim.R. 11 colloquy."); *State v. Butcher*, 12th Dist. No. CA2012-10-206, 2013-Ohio-3081, ¶ 11 ("As the requirements under R.C. Chapter 2950 are now part of [the] penalty for the offense, we find that Crim.R. 11 obligates a trial court to advise a defendant of the basic registration requirements under R.C. Chapter 2950 before accepting a guilty plea.").

{¶ 12} With respect to the penalties for the charges to which he was pleading guilty, the trial court conducted the following colloquy with Wallace at the plea hearing:

> THE COURT: The maximum penalty here on Counts One, Five, and Eight, the felonies of the first degree, would be 11 years on each count plus three years on each count for the firearm specification, so the maximum penalty here would be 42 years in prison and/or up to a $60,000 fine; do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And do you understand that the attorney acting on behalf [of] the State of Ohio as well as the attorneys acting on your behalf are recommending to me that you be sentenced to 20 years in prison?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And do you understand that when you were released, the Adult Parole Authority would definitely monitor you for five years when you got out; and then if you didn't do what they told you to do, you could [be] sent back to prison for up to half of your original sentence?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And so do you also understand, Mr. Wallace -- I understand that you singed a defense agreement; is that correct?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And do you understand that part of that agreement requires you to testify against others?
>
> THE DEFENDANT: Yes, ma'am.

THE COURT: And do you understand what happens if you do not follow that agreement?

THE DEFENDANT: Yes, ma'am.

THE COURT: And so now that you know your rights and the rights that you are giving by pleading guilty and the consequences of pleading guilty, do you want me to accept your guilty plea today?

THE DEFENDANT: Yes, ma'am.

THE COURT: Let the record reflect the defendant was present in open court and represented by counsel. The defendant was advised of all his [of] constitutional rights and made a knowing, intelligent, and voluntary waiver of those rights. I find the defendant understands the nature of the charges, the effects of the guilty plea, as well as the maximum penalties that could be imposed. Finding the plea to be voluntary, the court accepts the defendant's guilty plea. I find the defendant guilty of Count One, aggravated burglary, a violation of Ohio Revised Code 2911.11, a felony of the first degree with a firearm specification; Count Five, aggravated robbery, a violation of revised code 2911.01, felony of first degree with firearm specifications; Count Eight, rape, a violation of Ohio Revised Code, 2911.02, a felony of the first degree with firearm specifications.

Also, Mr. Wallace, do you understand that those gun specifications are mandatory time?

THE DEFENDANT: Yes, ma'am.

(May 8, 2017 Tr. at 22-24.)

{¶ 13} The state asserts imprisonment, rather than sex offender classification, registration, and notification, was the maximum penalty for the rape conviction. The court advised Wallace he could be sentenced up to 11 years of imprisonment for each of the first-degree felonies, including the rape charge. Therefore, the state argues, the trial court complied with Crim.R. 11(C)(2)(a) by ensuring Wallace was aware of the maximum penalty for pleading guilty to rape before accepting his plea. The state cites *State v. Johnson*, 40 Ohio St.3d 130 (1988), in support of this argument.

{¶ 14} In *Johnson*, the defendant pled guilty to three felony charges. At the plea hearing, the trial court informed him of the potential maximum term of imprisonment for each of the three felony convictions. *Johnson* at 131. The trial court subsequently imposed sentences on each of the convictions pursuant to the guilty pleas and ordered the sentences to be served consecutively. Johnson appealed, arguing the trial court failed to comply with Crim.R. 11(C) and advise him of the maximum sentence before accepting his plea because the court did not notify him that the sentences for the felony convictions could be imposed consecutively. *Id.* at 132. The Supreme Court rejected Johnson's argument, concluding "neither the United States Constitution nor the Ohio Constitution requires that in order for a guilty plea to be voluntary a defendant must be told the maximum total of the sentences he faces, or that the sentence could be imposed consecutively." *Id.* at 133. The court noted that Crim.R. 11(C)(2)(a) was phrased in the singular, referring to "the" maximum penalty, and reasoned that this referred to a single penalty. *Id.* The court concluded it was "beyond a reasonable interpretation to suggest that the rule refers cumulatively to the total of all sentences received for all charges which a criminal defendant may answer in a single proceeding." *Id.*

{¶ 15} Although the state argues that the reasoning in *Johnson* applies to the present case, we find it to be distinguishable. In *Johnson*, the defendant complained the trial court did not warn him the sentences for his felony convictions could be imposed consecutively—i.e., that the trial court did not advise him of the potential cumulative maximum penalty for all convictions. In the present case, by contrast, Wallace asserts the trial court failed to comply with Crim.R. 11 because it did not advise him of the maximum penalty for one of the charges to which he was pleading guilty—i.e., the sex offender classification, and registration and notification requirements, that would result from a conviction on the rape charge. The *Johnson* decision stated that "[i]in the context of 'the plea' to 'the charge,' the reasonable interpretation of [Crim.R. 11(C)(2)(a)] is that 'the maximum penalty' is for the single crime for which 'the plea' is offered." *Id.* at 133. The Tier III classification and registration and notification requirement were part of the maximum penalty for the rape charge to which Wallace was pleading guilty, and the trial court was required under Crim.R. 11(C)(2)(a) to determine that he understood that penalty before accepting the plea.

{¶ 16} The state further asserts that Crim.R. 11(C)(2)(a) does not require the trial court to give a defendant an oral advisement of the maximum penalty involved in a guilty or no contest plea. The state notes that Crim.R. 11(C)(2)(b) and (c) provide that the court must "inform" the defendant of certain information, whereas Crim.R. 11(C)(2)(a) provides the court need only "[d]etermin[e] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved." Therefore, the state argues, even if Tier III classification, notification, and registration requirements were part of the maximum penalty for a rape conviction, the trial court was not required to directly inform Wallace of that information before accepting his plea.

{¶ 17} This court has frequently referred to the maximum penalty as one of the non-constitutional protections that the trial court must inform a defendant of at the plea hearing. *See State v. Williams*, 10th Dist. No. 10AP-1135, 2011-Ohio-6231, ¶ 36 ("The non-constitutional rights of which a defendant must be informed include the nature of the charges and the maximum penalty."); *State v. Simpson*, 10th Dist. No. 07AP-929, 2008-Ohio-2460, ¶ 5 ("The non-constitutional rights that a defendant must be informed of are the nature of the charges with an understanding of the law in relation to the facts; the maximum penalty; and that, after entering a guilty plea or a no contest plea, the court may proceed to judgment and sentence."); *State v. Marcum*, 10th Dist. No. 07AP-905, 2008-Ohio-2292, ¶ 6 ("The non-constitutional rights that a defendant must be informed of are the nature of the charges with an understanding of the law in relation to the facts; the maximum penalty; and that, after entering a guilty plea or a no contest plea, the court may proceed to judgment and sentence."); *State v. Page*, 10th Dist. No. 98AP-1191 (June 30, 1999) ("Crim.R. 11(C)(2)(a) requires the trial court to personally inform the defendant of the nature of the charge, as well as the maximum penalty involved."); *State v. Duncan*, 10th Dist. No. 97APA08-1044 (Apr. 2, 1998) ("The trial court must also tell a defendant about other matters, such as the maximum penalty involved, before accepting the plea; however, substantial compliance with Crim.R. 11(C) will suffice when advising about these matters as long as no prejudicial effect occurs.").

{¶ 18} In the present appeal, however, we need not reach the question of whether a trial court must directly inform a defendant of the maximum penalty before accepting a plea. Assuming for purposes of analysis that the trial court is only required to determine

the defendant understands the maximum penalty that may result from a guilty plea, the trial court failed to do so in this case.  There was no reference to the Tier III classification or the registration and notification requirements in the trial court's colloquy with Wallace at the plea hearing.  Additionally, there was no reference to the Tier III classification or registration and notification requirements in the entry of guilty plea form that Wallace signed. The state cites the portions of the entry of guilty plea form in which Wallace acknowledged he had reviewed the facts and law of his case with counsel and in which Wallace's counsel certified that he had counseled Wallace with respect to the facts and the law of the case, and argues that Wallace's counsel could be expected to advise him of the implications of his guilty plea on the rape charge.  However, the trial court did not make any inquiry of Wallace or his counsel on the record to ensure that they had discussed and that Wallace understood the sex offender classification, registration, and notification requirements that would result from a guilty plea on the rape charge.  Therefore, we hold that under the circumstances of this case, where the trial court did not directly inform Wallace of the sex offender classification, registration, and notification requirements before accepting his plea, and there was no other evidence in the record on which the trial court could rely to determine that Wallace understood this penalty, the court failed to comply with Crim.R. 11(C)(2)(a) in accepting Wallace's guilty plea to the charge of rape.  *See Huff* at ¶ 22 ("Here, the trial court completely failed to mention during the plea colloquy that [the defendant] would be required to register as a sex offender as a consequence of his no contest plea.  There is likewise no mention of sex offender classification or registration in the written plea agreement.  For this reason also, the plea was not knowing, voluntary, and intelligent.").

{¶ 19} Under the substantial compliance standard for notification of non-constitutional protections under Crim.R. 11(C)(2)(a) and (b), a defendant normally must demonstrate prejudice in order to invalidate a plea on the basis that it was not knowingly, intelligently, and voluntarily made.  The test for prejudice is whether the plea would have otherwise been made.  *Haddad* at ¶ 8.  However, the Supreme Court has held that if a trial court *completely* fails to comply with Crim.R. 11 with respect to a non-constitutional protection, the plea must be vacated.  *Clark* at ¶ 32, citing *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, paragraph two of the syllabus.  "A complete failure to comply with the

rule does not implicate an analysis of prejudice." *Sarkozy* at ¶ 22. In this case, the trial court completely failed to comply with Crim.R. 11(C)(2)(a) because there was no basis on which the court could determine that Wallace understood the maximum penalty involved in the guilty plea for the rape charge; therefore, Wallace's guilty plea to that charge must be vacated.[2] *See Huff* at ¶ 22; *State v. Brown*, 8th Dist. No. 106410, 2019-Ohio-527, ¶ 13 ("We find the trial court's omission of any reference to sexual offender classification at Brown's plea hearing to constitute a complete failure to comply with Crim.R. 11.").

{¶ 20} Accordingly, we sustain Wallace's first assignment of error.

## B. Failure to make a formal finding of competency

{¶ 21} Wallace asserts in his second assignment of error the trial court erred by failing to make a finding on the record that he was competent to plead guilty. Wallace concedes he failed to raise an objection at trial and our review of this issue is limited to plain error. " 'Plain error consists of an obvious error or defect in the trial proceedings that affects a substantial right.' " *State v. Williams*, 10th Dist. No. 16AP-540, 2017-Ohio-5598, ¶ 28, quoting *State v. Lindsey*, 87 Ohio St.3d 479, 482 (2000). Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Even where a defendant meets the requirements for demonstrating plain error, "an appellate court is not required to correct it," because courts are to "notice plain error with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." (Emphasis omitted.) (Internal quotation marks omitted.) *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 23.

---

[2] We note the Supreme Court is currently considering a certified conflict on whether the failure of a trial court to inform a defendant at a plea hearing of all penalties associated with a sex offender classification constitutes a complete failure to comply with Crim.R. 11 and renders the plea void without the need to show prejudice. *State v. Dangler*, S.Ct. No. 2017-1703, 2018-Ohio-723 (determining that conflict exists). In each of the conflicting cases cited by the court there was at least some notice at the plea hearing that a sex offender classification would result from the guilty plea. *See State v. Dangler*, 6th Dist. No. WM-16-010, 2017-Ohio-7981, ¶ 3 ("At the plea hearing, the court informed appellant he would be obligated to register as a Tier III sex offender for life."); *Creed* at ¶ 17 ("[T]he record reflects that appellant was informed during his Crim.R. 11 dialogue that he would be labeled a Tier III offender by operation of law. Moreover, the trial court notified appellant that as a Tier III sex offender, he would be subject to various reporting and notification requirements for life."); *State v. Young*, 2d Dist. No. 2013-CA-22, 2014-Ohio-2213, ¶ 5 ("During the plea hearing, the court noted that there was a 'sexual registration,' and Young stated that this was his understanding of the plea agreement."). By contrast, in the present case Wallace was given no notice at the plea hearing that he would be classified as a Tier III sex offender due to his guilty plea. Thus, the present appeal presents a clearer case of complete failure to comply with Crim.R. 11 than the cases under consideration by the Supreme Court.

{¶ 22} "A criminal defendant is presumed to be mentally competent and bears the burden of rebutting this presumption." *State v. Grant*, 10th Dist. No. 12AP-650, 2013-Ohio-2981, ¶ 10. Wallace's appointed counsel filed a suggestion of incompetence and the trial court ordered an examination of Wallace's mental condition. Pursuant to the trial court's order, an examination was conducted and a report was filed opining Wallace was capable of understanding the nature and objective of the proceedings against him and assisting in his defense. After the report was filed, Wallace's counsel stipulated to the report at two separate hearings conducted before the plea hearing. Nevertheless, Wallace argues on appeal that the trial court erred by failing to make a formal entry on the docket finding that Wallace was competent to enter a plea.

{¶ 23} This court has previously held that where a defendant stipulates to a psychologist's report determining the defendant is competent, the trial court cannot be said to have erred in relying on that report to find the defendant competent. *State v. Miller*, 10th Dist. No. 10AP-420, 2010-Ohio-5876, ¶ 12. *See also State v. O'Neill*, 7th Dist. No. 03 MA 188, 2004-Ohio-6805, ¶ 21 ("Where the parties stipulate to the contents of the competency reports which opine that the defendant is competent, the parties stipulate to competency and waive the competency hearing."). The Supreme Court has also held that "the failure to hold a mandatory competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency." *State v. Bock*, 28 Ohio St.3d 108, 110 (1986). In the present case, Wallace's counsel raised the issue of competency and the trial court ordered an evaluation; the evaluation found Wallace to be competent. Wallace's counsel stipulated to the report of the evaluation on two separate occasions prior to the plea hearing. We find no other indicia of incompetency in the record and Wallace fails to point to any such indicia in his appeal. Thus, there is no indication there would have been any basis for the trial court to find Wallace incompetent to enter guilty pleas if it had made a formal entry on the record regarding his competency. Under these circumstances, we cannot conclude the trial court's failure to make a competency finding on the record constitutes a manifest miscarriage of justice such that the court would find plain error.

{¶ 24} Accordingly, we overrule Wallace's second assignment of error.

**IV. Conclusion**

{¶ 25} For the foregoing reasons, we sustain Wallace's first assignment of error and overrule his second assignment of error. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment affirmed in part and reversed in part;*
*remanded for further proceedings.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____