[Cite as *State v. Carmon*, 2025-Ohio-1713.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 24AP-134 |
| v. | : | (C.P.C. No. 20CR-3948) |
| Marcus J. Carmon, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on May 13, 2025

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Mark R. Wilson*, for appellee. **Argued:** *Mark R. Wilson*.

**On brief:** *Harris Law Firm*, *L.L.C.*, and *Felice L. Harris*, for appellant. **Argued:** *Felice L. Harris*.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Marcus J. Carmon, appeals the judgments of the Franklin County Court of Common Pleas overruling his presentence motion to withdraw his guilty plea and entering sentence.

{¶ 2} On August 25, 2020, Carmon was indicted for 23 counts, including engaging in a pattern of corrupt activity, compelling and promoting prostitution, human trafficking, and possession and trafficking in drugs, and he was arrested that same date. He remained in custody for the entire pendency of the case, which was scheduled for a jury trial set for November 6, 2023. But instead of proceeding to trial on that date, Carmon entered a negotiated plea of guilty—the state agreed to the dismissal of most of the indicted charges, and Carmon agreed to enter a guilty plea to three third-degree felony counts of compelling

prostitution, one third-degree felony count of having weapons while under disability, and one first-degree felony count of possession of cocaine.

{¶ 3} Carmon's plea form indicated that each of the compelling prostitution charges carried a maximum sentence of 36 months, that the weapon charge carried a maximum sentence of 36 months, and that the possession charge carried a possible indefinite sentence of 11 to 16.5 years. The plea form also stated that the defense and the state had jointly recommended a presentence investigation and a sentence of 6 to 18 years incarceration. (*See* Nov. 6, 2023 Entry of Guilty Plea at 1.) The plea form contained a checkbox stating that "I understand that mandatory prison term(s) is/are required for the following offenses," but this box was *not* checked or initialed by the defendant. *Id.* Instead, the box indicating that there was a "presumption in favor of a prison term" *was* checked, indicating that the law recommended prison for count 19, the first-degree felony possession charge. *Id.* at 2.

{¶ 4} The trial court examined the plea form on the record with Carmon, and the hearing transcript contains the following exchange:

> THE COURT: So you know in your 20 case you're changing your previously entered not guilty plea and you're pleading guilty to four third degree felonies, *each carry a maximum possible prison sentence of 3 years*, maximum possible fines per count of $10,000; and then you're pleading guilty to a first degree felony which has an *indefinite sentence of a minimum of 11 years and a maximum of 16-and-a-half years*; and in the 21 case you are pleading to a fourth degree felony which carries a maximum prison sentence of 18 months and a maximum fine of $5,000 -- and I'm sorry, in the 20 case, the 11 years is a maximum of 16 to 20 -- 16-and-a-half years carries a maximum fine of $20,000; do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand there is two types of sentences you can get here, the Court is going to order a presentence investigation before imposing a sentence, but this Court has made no promises as to what your sentence will be; do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand you could get a community control-type sentence where you would be placed under the supervision of the Adult Probation Department of this court for

a period of somewhere from one to five years, there would be certain requirements made of you? If you were to violate any of those requirements, you could be revoked from probation and be sent to prison for anywhere from 9 months on both cases to -- let's see, 9 -- 12 -- to really up to 28-and-a-half years; do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand if you end up in prison as a result of these pleas, once released from prison, in the 21 case you would have an optional post-release supervision of up to 2 years; in the 20 case, you would have a mandatory 2 to 5 years, and then on the felony sex offense, a mandatory 5 years of post-release control; and on the F3s, optional up to 2 years supervision by the Adult Parole Authority of Ohio? If you would violate the law while under their supervision, they could send you back to prison for more time on this case than this Court would give you, but in any event, no more extra time than an amount equal to one-half of this court's sentence, unless your violation constitutes a felony, then you may be prosecuted, convicted, and sentenced on that new felony. The court in that new felony case may terminate the term of post-release control in this case with no further violation, or the court in that new felony case may give you an additional 12 months in ODRC, or the amount of time left on post-release control, which is ever greater, or they could give you community control to be served concurrently or consecutively to your new charge; do you understand that?

THE DEFENDANT: Yes, ma'am.

(Emphasis added.) (Nov. 6, 2023 Tr. at 6-8.) As set forth above, the trial court specifically discussed the possibility of imposing a community control sanction and the requirement of a mandatory period of two to five years postrelease control if Carmon was incarcerated on the case.[1] But at no point in the transcript does the court inform Carmon that he would not actually be eligible for a community control sentence; rather, its explanation of community control sentences implies the opposite. *Id.* Likewise, Carmon's plea form does not indicate that any of his charges included a mandatory prison term, and the trial court never stated that Carmon's possible sentence included a mandatory prison term.

{¶ 5} On December 21, 2023, Carmon sent a letter to the trial court expressing his desire to withdraw his plea, and on January 7, 2024, Carmon's attorney filed a motion to

---

[1] Carmon simultaneously pleaded guilty to charges in a separate case that is not part of this appeal.

withdraw his plea, apparently based solely on Carmon's representation that he was "innocent of all charges." (Jan. 7, 2024 Mot. to Withdraw Plea at 4.) The trial court held a hearing on the motion on January 16, 2024:

> THE COURT: Thank you.
>
> We are here today because Mr. Carmon as of the end of the December, after a plea taken November 6th, has asked this Court to withdraw his plea. Pursuant to statute, this Court is holding a hearing regarding that.
>
> However, Mr. Carmon, based upon the note I got from you, you are under the -- either illusion or delusion that you have a right to withdraw this, you don't. There is a hearing that is going to be held and pursuant to that hearing, then this Court will decide.

(Jan. 16, 2024 Tr. at 3-4.) Following the presentation of limited evidence on the merits of the charges against Carmon, the trial court denied the motion:

> [THE COURT:] A presentence motion to withdraw a guilty plea often is freely and liberally granted, however, a defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. It is the responsibility of the defendant to establish a reasonable and a legitimate basis for a withdrawal of the plea.
>
> This Court has held a hearing and upon consideration of the factors, the Court does not find that a withdrawal of the guilty pleas are warranted.
>
> The Court finds that there would be some prejudice to the prosecution. The victims have an interest in putting this behind them. The Court finds that the defendant is represented not by one highly qualified attorney, but by two highly competent counsels.
>
> This Court at the time of the plea held an extensive Criminal Rule 11 hearing before this defendant entered into the plea. This Court allowed the defendant a full hearing on this motion to withdraw his pleas in both cases. The Court has fully and fairly considered the motions to withdraw. The Court does not find the motions were made in a reasonable time, as they were made just prior to defendant's sentencing date and the sentencing in the 2021 case. The motion does not set forth specific reasons but states generally that it is necessary to prevent a manifest injustice. This does not weigh in defendant's favor. There has been no indication that the defendant did not understand the nature of the charges and the possible penalties. While the defendant argues that he is innocent, there

is extensive evidence of his guilt. He disputed the facts at the hearing but his jail calls refute much of what he disputes. Surveillance has linked him to his residence and not his father.

The Court also notes the defendant was not rushed into entering this plea as the 2020 case has been pending since August 25th, 2022. Defendant had sufficient time before entering the plea to weigh the evidence against him and discuss the risk and potential outcomes going to trial. The Court finds the plea is favorable to the defendant as numerous counts, 19 counts were nolled in exchange for this plea.

Therefore, upon review, the Court finds the factors weigh against the defendant being permitted to withdraw his plea, rather the Court concludes the defendant suffered a mere change of heart which is not a reasonable and legitimate basis for the withdrawal of the plea. He has not shown that he has any new evidence or defenses to the charge.

*Id*. at 31-33.

**{¶ 6}** The trial court then proceeded to sentencing:

THE COURT: In 20CR-3948, Count Nineteen, the Court is sentencing you to 11 years; Count Three, the Court is sentencing you to 3 years, that will be consecutive to Count Nineteen, however, Counts Seven, Ten and Eighteen will be concurrent to Count Three. This Court will not disrupt the joint recommendations of counsel. The mere fact that Mr. Carmon tried to withdraw his plea, will not be held against him when it comes to sentencing and I will still give the joint recommendation.

. . .

Have we come to a conclusion of jail time credit, Mr. Meyers?

MR. MEYER: Judge, I only see that he was booked on November 2nd, 2020. Do you think he was booked in September?

MR. MCDONALD: He was.

THE COURT: I will tell you what, we will go with what probation provided and you can supplement the Court and I can change that.

So in 20CR-3948, the Court is giving you 804 days jail credit. And in the 4 -- in the 4653, what was that, 11? What was that?

MR. MEYER: 1, 164.

THE COURT: 1, 164.

> MR. MCDONALD: And that report was generated on --
>
> THE COURT: Yeah. So the Court will give him that credit.
>
> MR. MCDONALD: Yes, ma'am.
>
> THE COURT: Seven, Ten and Eighteen are 3 years on each, concurrent to each other and concurrent to Count Three. Fines and costs are waived. That will be all.

*Id.* at 33-35. Accordingly, based on the foregoing, it seemed that the trial court had imposed a total, aggregate sentence of 14 years, in accordance with the parties' joint recommendation of a sentence between 6 and 18 years. Carmon apparently understood this, stating that he was "just sorry for everything that -- anybody think they went through. I just wish I had a chance to -- just thank you. Thank you, Your Honor, for -- for showing me mercy." *Id.* at 40.

{¶ 7} But on January 22, 2024, Carmon was "brought back . . . for clarification on Defendant's sentence." (Jan. 24, 2024 Jgmt. Entry at 1.) At that time, the trial court stated as follows:

> Two things that will be required by the Ohio Department of Rehabilitation and Correction is that his indefinite sentence notice has been given to him, and his tier registration, which was part of the plea, but forgotten at sentencing.
>
> So in 20CR-3948 in Count 19, the maximum sentence is an indefinite sentence having a minimum of 11 years and a maximum sentence of 16-and-a-half years. The recommendation range was 16 to 18 years in ODRC.
>
> And, Mr. Carmon, you have pled guilty to a sexually orientated offense. As such, you will be a Tier II registrant for a period of 25 years with in-person verification every six months.

(Jan. 22, 2024 Continued Tr. of Sentencing Proceedings at 2.) As a result, Carmon's sentence as imposed was not 14 years, or even between 6 to 18 years as indicated by the joint recommendation. Instead, the court imposed a "[t]otal aggregate . . . indefinite sentence of a minimum of Fourteen (14) years with a potential maximum of up to Nineteen and One Half (19.5) years." (Jan. 24, 2024 Jgmt. Entry at 2.) The trial court's entry awarded Carmon "**Eight Hundred Two (802) days** of jail credit . . . [and] all additional jail time served while awaiting transportation to the institution from the date of the imposition of this sentence." (Emphasis in original.) *Id.* at 3-4. This appeal followed, and Carmon now asserts four assignments of error with the trial court's judgment:

[I.]  Marcus Carmon's plea was not knowingly, intelligently, and voluntarily made, in violation of Crim.R. 11 and his rights to due process under the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

[II.] The trial abused its discretion by denying Mr. Carmon's presentence motion to withdraw his guilty plea.

[III.] Mr. Carmon's sentence is clearly and convincingly contrary to law.

[IV.]  Mr. Carmon's jail time credit is erroneously recorded on the Journal Entry of Sentence.

{¶ 8}  In his first assignment of error, Carmon asserts that the trial court's plea colloquy failed to advise him of the maximum penalty available for the offenses to which he pleaded guilty, failed to ensure that he understood that a portion of his sentence was mandatory, failed to ensure that he understood he was ineligible for a community control sanction, and failed to abide by the joint recommendation of the parties regarding the length of the sentence.

{¶ 9}  A guilty plea in a criminal case must be made knowingly, intelligently, and voluntarily, and failure as to any of these requirements " 'renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution.' " *See State v. Veney*, 2008-Ohio-5200, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 535, 527 (1996).  Crim.R. 11(C) provides specific requirements for a trial judge to follow to " 'ensure that guilty pleas are knowingly, intelligently, and voluntarily made.' " *See State v. Wallace*, 2019-Ohio-1005, ¶ 7 (10th Dist.), quoting *State v. Clark*, 2008-Ohio-3748, ¶ 41.  Crim.R. 11(C)(2) provides:

In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and *of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.*

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

(Emphasis added.) Carmon argues that the trial court's plea colloquy violates the rule, both in that it fails to inform Carmon that he was ineligible for a community control sentence as required by Crim.R. 11(C)(2)(a), and in that it implies that he was in fact eligible for such a sentence. He asserts that his plea form suffers from similar defects, as it fails to indicate that a portion of Carmon's sentence included mandatory time and specifically indicates that Carmon was eligible for a community control sanction. Moreover, Carmon observes that the maximum indefinite sentence imposed by the trial court exceeds the maximum recommendation of the parties by one and one-half years.

{¶ 10} The state argues that strict compliance with the Crim.R. 11 rule was not required and that the trial court's plea colloquy substantially complies with Crim.R. 11; that Carmon would have entered the plea in any event and, thus, it was not prejudiced by the trial court's acceptance of his plea; that Crim.R. 11 did not require the court to inform Carmon that a portion of his sentence was mandatory; that Carmon was not prejudiced because he subjectively should have known that he was not being sentenced to probation; and that even though it is undisputed that the agreed sentence recommendation did not contemplate the impact of the Reagan Tokes Act, that Carmon was not prejudiced because during the colloquy, he was informed that "this Court has made no promises as to what your sentence will be." (Tr. of Plea Hearing at 6.) Moreover, the state contends that all the alleged defects in Carmon's plea can only be reviewed for plain error under Crim.R. 52(B).

{¶ 11} A defect constitutes " 'plain error' " when it " 'consists of an obvious error or defect in the trial proceedings that affects a substantial right.' " *State v. Williams*, 2017-Ohio-5598, ¶ 28 (10th Dist.), quoting *State v. Lindsey*, 2000-Ohio-465, ¶ 13. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed

although they were not brought to the attention of the court," but even if a defendant meets the requirements for demonstrating plain error, " 'an appellate court is not required to correct it,' because courts are to 'notice plain error with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *State v. Wallace*, 2019-Ohio-1005, ¶21 (10th Dist.), quoting *State v. Rogers*, 2015-Ohio-2459, ¶ 23. (Emphasis deleted.) (Internal quotation marks deleted and citations omitted.) But even assuming that the state is correct in arguing that the defects in Carmon's plea are subject to the rule, the trial court's failure to comply with Crim.R. 11 is plain in that the errors are both obvious and affect Carmon's substantial rights. Accordingly, Crim.R. 52(B) is not an impediment to this court's review of those issues and, therefore, the primary question for this court is whether Carmon was truly prejudiced by the problems with his plea.

{¶ 12} And we have little trouble concluding that Carmon was prejudiced. The state contends that the plea colloquy substantially complies with Crim.R. 11 as set forth in *State v. Nero*, 56 Ohio St.3d 106, 108 (1990) ("Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving."), and that even without such defects Carmon would have entered the plea. *See, e.g., State v. Clark*, 2008-Ohio-3748, ¶ 32 ("When the trial judge does not substantially comply with Crim.R. 11 in regard to a nonconstitutional right, reviewing courts must determine whether the trial court partially complied . . . with the rule. . . . [And if so], the plea may be vacated only if the defendant demonstrates . . . [that it would not] have otherwise been made."). (Emphasis deleted.) (Internal quotation marks deleted and citations omitted.)

{¶ 13} But there are simply too many errors with the plea for this court to ignore. Most notably, Carmon received more time than contemplated by the plea agreement, even though the judge stated that she was abiding by that recommendation. Both the plea form and the colloquy were affirmatively misleading regarding the mandatory nature of the sentence for a first-degree felony drug offense, pursuant to R.C. 2925.11(C)(4)(e), in that each failed to mention the nature of that sentence as a minimum term under the Reagan Tokes Act and the maximum sentence for the offense under the Act exceeded the maximum joint recommendation. Moreover, the eleven-year minimum term the trial court ultimately imposed for that offense was really a "maximum minimum" term, in the sense that eleven

years was the greatest minimum term the court could impose under R.C. 2929.14(A)(1)(a). Given these failures, we cannot conclude that the trial court substantially complied with the Crim.R. 11 requirement that "the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." Crim.R. 11(C)(2).

{¶ 14} In *Wallace*, 2019-Ohio-1005 (10th Dist.), we held that failure to advise a defendant pleading guilty to rape of the sex offender classification, registration, and notification requirements associated with the plea to the offense meant that the defendant had not been advised of the maximum penalty associated with that offense. We observed that "the trial court completely failed to comply with Crim.R. 11(C)(2)(a) because there was no basis on which the court could determine that Wallace understood the maximum penalty involved in the guilty plea for the rape charge; therefore, Wallace's guilty plea to that charge must be vacated." *Wallace* at ¶ 30-31. And we are persuaded by the Eighth District's analysis in *State v. Tutt*, 2015-Ohio-5145 (8th Dist). When faced with a case directly analogous to Carmon's, that court held:

> This is not a case in which the trial court informed the defendant of the mandatory nature of his sentence but in some way got it wrong, e.g., by misstating the length of the sentence or failing to adequately explain what a mandatory sentence means, or where conflicting information was provided to the defendant with respect to whether he was subject to a mandatory prison sentence. . . . In this case, the trial court neglected to mention to Tutt "at all" that he would have to serve a mandatory prison sentence on the base offenses in Counts 3 and 4. Because the trial court failed to inform Tutt of the mandatory prison term on the base offenses (which was a part of the maximum penalty), before it accepted his guilty pleas, the trial court wholly failed to comply with this requirement of Crim.R. 11(C)(2)(a). As such, no prejudice analysis is required.

*Tutt* at ¶ 30-31. We agree. Here, the trial court wholly failed to comply with the requirements of Crim.R. 11 by misstating the maximum penalty for the offense, by failing to warn Carmon that based on his plea that he faced mandatory time, and by failing to inform him he was not eligible for a community control sentence. Accordingly, even if

Carmon is required to demonstrate prejudice in the trial court's acceptance of his plea, on this record we have little trouble concluding that he has done so.

{¶ 15} Carmon's first assignment of error is sustained. We decline to address his remaining assignments of error, as our resolution of his first assignment of error has rendered them moot. The trial court's judgment is reversed, and this case is remanded for further proceedings, beginning with the vacatur of Carmon's guilty plea.

*Judgment reversed and vacated;*
*cause remanded with instructions.*

MENTEL and BOGGS, JJ., concur.

_____